b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

DOMINIQUE SNEZANA                    CIVIL DOCKET NO. 2:20-CV-00467
THOMAS,
Plaintiff

VERSUS                                DISTRICT JUDGE CAIN

ANDREW SAUL,
Defendant                             MAGISTRATE JUDGE PEREZ-MONTES

---

**REPORT AND RECOMMENDATION**

Dominique Snezana Thomas ("Thomas") appeals the denial of her claims for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Substantial evidence does not support the Administrative Law Judge's ("ALJ's")/Commissioner's conclusion that Thomas is not disabled by her mental impairments. Therefore, Thomas's appeal should be GRANTED; the Commissioner's final decision should be VACATED; a JUDGMENT AWARDING DIB from the alleged disability onset date should be entered; and the case should be REMANDED for a determination of the specific amount of benefits to which Thomas is entitled.

I.    **Background**

   A.    **Procedural Background**

Thomas filed applications for DIB and SSI on November 20, 2017 (protected filing date of November 7, 2017), alleging a disability onset date of January 1, 2017 (Doc. 10-1 at 191, 195) due to "rheumatoid arthritis, lupus SLE, degenerative disc

disease, fibromyalgia, depression, anxiety, and RLS." ECF No. 10-1 at 82-3. Those applications were initially denied by the Social Security Administration ("SSA"). ECF No. 10-1 at 121.

A *de novo* hearing was held before an Administrative Law Judge ("ALJ"). Thomas appeared with her attorney and a vocational expert ("VE"). ECF No. 10-1 at 46. The ALJ found that Thomas suffers from severe impairments of rheumatoid arthritis, systemic lupus, erythematosus, fibromyalgia, degenerative disc disease of the cervical spine, major depressive disorder, and generalized anxiety disorder. ECF No. 10-1 at 22-23. The ALJ further found that Thomas has the residual functional capacity to perform light work except that: (1) she can only occasionally climb ramps and stairs; (2) she can never climb ladders, ropes, or scaffolds; (3) she can only occasionally stoop, kneel, crouch and crawl; (4) she must avoid concentrated exposure to extreme cold and sunlight; (5) she must avoid working at unprotected heights and around or with hazardous machinery; (6) she much avoid working on uneven, vibrating, and rough surfaces,; (7) she can handle only occasional changes to her work setting; (8) she can only occasionally make work-related decisions; (9) she can have no more than occasional interactions with the public; and (10) she can only understand and remember simple instructions. ECF No. 10-1 at 24.

The ALJ found there are a significant number of jobs that Thomas can perform. ECF No. 10-1 at 31. The ALJ concluded that Thomas was not disabled

from January 1, 2017 through the date of her decision on May 15, 2019.  ECF No. 10-1 at 31.

Thomas requested a review of the ALJ's decision.  The Appeals Council declined to review it (ECF No. 10-1 at 5), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Thomas filed this appeal for judicial review of the Commissioner's final decision.  Thomas raises the following grounds for relief on appeal (ECF No. 11):

1. The ALJ erred by finding that Thomas has not been under a disability through May 15, 2019.

2. The ALJ erred by finding that Thomas does not suffer from significant mental problems and physical problems which, singularly or in combination, rendered her disabled in light of the substantial medical evidence in the record.

3. The ALJ erred in failing to give sufficient weight to the opinions of Dr. Mendez, her treating rheumatologist, when the evidence showed that she was disabled and did not support the ALJ's finding that she was not disabled.

4. The ALJ erred in failing to give weight to the opinion of its own consultative expert regarding her mental condition when the evidence proved that she was disabled and was consistent with the opinions of her treating mental healthcare providers.

5. The ALJ erred in finding that the claimant could perform work that exists in significant numbers in the economy.

6. The ALJ erred in finding claimant's testimony regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence.

The Commissioner filed a response to Thomas's appeal (ECF No. 15), to which Thomas replied (ECF No. 16).

   **B.**     **Medical and Administrative Records**

Thomas's medical records showed that she finished high school, attended college and completed an associate degree, worked as a waitress for over 20 years, is married, and has two grown children.  ECF No. 10-1 at 432, 481, 536.  Thomas is separated from her husband of 30 years.  ECF No. 10-1 at 479.

Dr. Justin Lyman, a rheumatologist, has treated Thomas for arthritis since 2011.  ECF No. 10-1 at 320-343, 351-359.  In October 2014, Dr. Justin Lyman treated Thomas for rheumatoid arthritis, which had gradually onset years ago.  ECF No. 10-1 at 320.  Thomas reported mild, intermittent pain in the interphalangeal joints, neck, and back.  ECF No. 10-1 at 320.  Thomas had been off of her medications, so Humira, methotrexate, and gabapentin were prescribed.  ECF No. 10-1 at 321.

In October 2015, Thomas went to the emergency room with complaints of pain, including right shoulder pain.  ECF No. 10-1 at 304.  Thomas's history of lupus was noted.  Tests and x-rays did not reveal any abnormalities, and Thomas was discharged.  ECF No. 10-1 at 306-19.

In August 2016, Dr. Enrique A. Mendez, a rheumatologist, evaluated Thomas for rheumatoid arthritis in both hands.  Thomas had two swollen joints and six

tender, painful joints.  ECF No. 10-1 at 440.  Dr. Mendez adjusted her Methotrexate dosage.  ECF No. 10-1 at 441.

In February 2017, Thomas complained of aching pain in her joints.  ECF No. 10-1 at 443, 734-37, 794-97.  Dr. Mendez found Thomas's hands were tender but the joints were not swollen or painful.  ECF No. 10-1 at 445-46.  Dr. Mendez diagnosed rheumatoid arthritis in both hands, inactive lupus, and depression/anxiety (for which he prescribed Celexa).  ECF No. 10-1 at 446.

In June 2017, Thomas reported doing well on her current treatment of Plaquenil and methotrexate.  ECF No. 10-1 at 729, 769-72.  Thomas had aching pain in her hands and neck, but no swollen joints or tenderness.  ECF No. 10-1 at 729, 731.  Thomas's blood pressure was elevated (150/88).  ECF No. 10-1 at 732.  X-rays of Thomas's lumbosacral spine in July 2017 showed multilevel multifactorial degenerative change at the L4-L5 and L5-S1.  ECF NO. 10-1 at 851, 864.

In August 2017, x-rays of Thomas's cervical spine showed well-maintained vertebral body height and alignment and minimal osteophytosis.  ECF No. 10-1 at 638, 755.  X-rays of Thomas's hands showed mild degenerative changes of the wrists, but no joint space narrowing or erosions.  ECF No. 10-1 at 641, 756.  Dr. Mendez found 2 swollen joints and 6 painful joints in her hands caused by rheumatoid arthritis.  ECF No. 10-1 at 647, 726.

Chest x-rays in August 2017 did not show any acute cardio-pulmonary abnormality.  ECF No. 10-1 at 848, 863.  X-rays of Thomas's cervical spine showed

minimal osteophytosis of the cervical spine.  ECF No. 10-1 at 849, 862.  X-rays of her hands showed no radiographic abnormalities.  ECF No. 10-1 at 850, 861.

In September 2017, Thomas was treated by Dr. Mendez for rheumatoid arthritis.  ECF No. 10-1 at 431, 626, 719-22.  Thomas complained of pain that was a 9 out of 10, she was unable to sleep well, she was anxious and depressed, and she was unable to walk long distances.  ECF No. 10-1 at 431, 626.  Thomas's pain was moderate in the cervical and lumbar spine.  ECF No. 10-1 at 431, 626.  Thomas also had three tender trigger points.  ECF No. 10-1 at 433, 629.  Thomas's pain was chronic despite daily narcotics.  ECF No. 10-1 at 432, 627.  Dr. Mendez prescribed a Depo Medrol injection and refilled Thomas's prescriptions for Prednisone, methotrexate, and Lyrica.  ECF No. 10-1 at 435, 629, 633.

In October 2017, Thomas complained of mild to moderate pain.  ECF No. 10-1 at 603, 714-17.  She had four tender joints.  ECF No. 10-1 at 604.  Dr. Mendez diagnosed rheumatoid arthritis of both hands, with a good disease prognosis.  ECF No. 10-1 at 604.  Dr. Mendez continued Thomas's methotrexate, Lyrica, and transmucosal buprenorphine.  ECF No. 10-1 at 605.

In November 2017, Thomas complained of moderate pain in both hands, and her right shoulder; severe pain in her right hip and lumbar spine; and moderate pain in the cervical spine.  ECF No. 10-1 at 424, 574, 709.  Thomas said her morning stiffness lasts two hours.  ECF No. 10-1 at 424.  Dr. Mendez found 3 tender joints and three tender trigger points.  ECF No. 425, 576, 711.  Dr. Mendez

6

diagnosed rheumatoid arthritis in both hands, severe fibromyalgia, and lupus.  ECF No. 426, 577.  Dr. Mendez noted that the rheumatoid arthritis in both of Thomas's hands was not active and there were no erosions.  EC No. 10-1 at 413.  He also found her lupus was not active and was not suggestive of systemic lupus erythematosus.   ECF No. 10-1 at 415, 434.   Thomas's methotrexate was discontinued and she was prescribed hydroxychloroquine.  ECF No. 10-1 at 427.

In December 2017, Thomas complained of difficulty bending down and participating in recreational activities, and mild pain in her hands and lumbar spine.  ECF No. 10-1 at 419, 564, 705.  Thomas did not have swollen joints, but had three tender trigger points, in the quadratus lumborus, trapezius, and scapular.  ECF No. 10-1 at 420-21, 566, 707.  Dr. Mendez found Thomas had a decreased range of motion in her neck, mild pain in both hands, and tenderness in the right shoulder and right hip.  ECF No. 10-1 at 421.  Dr. Mendez diagnosed severe fibromyalgia, degenerative disc disease of the cervical spine, and depression/anxiety.  ECF No. 10-1 at 421, 566, 707.

Dr. Mendez noted that Thomas was on medication for depression and anxiety, which were controlled.  ECF No. 10-1 at 415. Dr. Mendez also noted that Thomas's chronic pain (25 years) is caused by fibromyalgia syndrome and degenerative disc disease of the cervical spine.  ECF No. 10-1 at 411.

In January 2018, Thomas had mild to moderate pain in both hands, and tenderness in the right shoulder and hip.  ECF No. 10-1 at 557-59, 700-702.

7

Thomas had four swollen joints and 6 painful joints.  ECF No., 10-1 at 558, 702.  Dr. Mendez continued Thomas's opiates.  ECF No. 10-1 at 560, 703.

Mental Health Nurse Practitioner Fralan Gatte, APRN, also examined Thomas in January 2018.  Gatte noted that Thomas had separated from her husband of 30 years; was depressed, unmotivated, and dysphoric;  had crying spells, decreased concentration, and feelings of guilt and worthlessness; and was anxious.  ECF No. 10-1 at 479.  Thomas had trouble sleeping, her heart raced, she was gaining weight, and she was having panic attacks.  ECF No. 10-1 at 480-81.  Thomas was having difficulty functioning at home and at work.  ECF No. 10-1 at 481.

Thomas was diagnosed with major depressive disorder, severe; generalized anxiety disorder; panic attack; and chronic pain syndrome.  ECF No. 10-1 at 485.  Gatte increased Thomas's Cymbalta dose (for depression, anxiety and chronic pain syndrome), continued her Wellbutrin and Trazodone (for sleep), added Vistaril (anxiety), referred her for psychotherapy, and recommended exercise.  ECF No. 10-1 at 485.

In February 2018, Thomas started psychotherapy with Roberta Dowden, LCSW.  ECF No. 10-1 at 533.  Thomas reported prior episodes of depression in 2005 as a young adult in California, in Louisiana in 2011, and in 2018, when she separated from her husband because he began a homosexual relationship and became emotionally and verbally (and occasionally physically) abusive toward her.

ECF No. 10-1 at 533, 536).  Thomas's husband moved away but continued to pay Thomas's mortgage, car insurance, health insurance, and taxes.  ECF No. 10-1 at 533-34.  Thomas paid for her utilities, groceries, gasoline, medical co-pays and incidentals.  ECF No. 10-1 at 534.  Thomas's husband began asking her for money. ECF No. 10-1 at 534.

When Thomas's place of employment changed ownership, and she was not permitted to take off for medical purposes, Thomas was unable to find another job and she stopped working.  ECF No. 10-1 at 534.  Thomas's two sons are grown. ECF No. 10-1 at 536.  The mental status exam noted that Thomas was tearful; her affect was constricted, worrisome and sad; her mood was depressed and anxious; her memory was intact but her concentration and attention were impaired, and her insight was mildly impaired.  ECF Nos. 10-1 at 537-38.  Thomas was diagnosed with major depressive disorder, PTSD[1], and panic disorder.  ECF No. 10-1 at 538. Thomas was urged to apply for DIB because her symptoms were too severe for her to work.  ECF No. 10-1 at 538.

In March 2018, Thomas reported that her husband wanted her to move to Oklahoma with him and work there, but Thomas refused.  ECF No. 10-1 at 532.

---

[1] The PTSD appears to have been caused by events that occurred when Thomas was 14 and 21 years old.  ECF No. 10-1 at 536.

Thomas underwent a disability evaluation on March 10, 2018 by Dr. Thomas Royals.[2]  ECF No. 10-1 at 487.  Thomas reported rheumatoid arthritis diagnosed over 25 years before with the main issue being hand pain that is worse with activities.  ECF No. 10-1 at 487.  Thomas was taking prednisone.  ECF No. 10-1 at 487.  Thomas also reported neck and back degenerative disc disease, but stated she never had surgery, had not tried PT or injections, and did not have radicular pain.  ECF No. 10-1 at 487.  Thomas's neck pain is localized to her cervical spine and paraspinal muscles, and her back pain is localized to the paraspinal area, greater on the left side.  ECF No. 10-1 at 487.  Thomas also reported depression and anxiety, for which she takes medications, but has never been hospitalized due to mental illness and had never attempted to harm herself.  ECF No. 10-1 at 487.  Thomas reported having fibromyalgia which causes fatigue, especially with activity, and pain all over daily, but that Lyrica was helping.  ECF No. 10-1 at 487.  Thomas also claimed she has restless leg syndrome ("RLS") which keeps her up, wakes her at night, and prevents her from sleeping well.  ECF No. 10-1 at 487.  Thomas has medication for RLS but does not tolerate it well.  ECF No. 10-1 at 487.

Thomas told Dr. Royals that her daily medications are Lyrica, Prednisone, Hydrocodone, "Burioniou", Duloxetine, Folic Acid, Hydroxyzine Pamode, Trazodone,

_____

[2] Thomas's attorney points out that the SSA did not include a curriculum vitae for Dr. Royals in the record.  While that appears to be true, and is an oversight, it also appears from a cursory search online that there is only one Thomas Royals, M.D. and he is an orthopaedic surgeon in Mississippi who specializes in hand and upper extremity surgery and orthopaedic trauma.  *See  https://www.hattiesburgclinic.com/orthopaedics-sports-medicine-welcomes-royals/.*

Fosteum, Hydrochloriquin, and Vitamin D. ECF No. 10-1 at 488. Thomas also said she takes Humira (adalimumab) biweekly (every other week), and had just discontinued taking methotrexate weekly. ECF No. 10-1 at 488, 551.

Thomas told Dr. Royals about the pain and difficulty in both wrists, both hands, both knees, both ankles, and both feet, but her hands are the most severely affected. ECF No. 10-1 at 488. Thomas stated that she finished college and was laid off from her waitressing job in October 2017. ECF No. 10-1 at 489. Thomas said she can: use crutches as needed to ambulate; can walk up to a mile on level ground; climb one flight of stairs; write; turn a doorknob; and feed and dress herself. ECF No. 10-1 at 489. Thomas said she has difficulty: standing for 30 to 60 minutes; lifting more than five pounds with the right arm; driving more than 15 minutes; sweeping and vacuuming; mopping more than 30 minutes; cooking; washing dishes; grocery shopping more than five minutes; and doing yard work.

Dr. Royals found that Thomas can: get up and out of a chair without difficulty; get on and off the exam table without difficulty; and ambulate with a normal gait without difficulty. ECF No. 10-1 at 490. Thomas has discomfort with lateral rotation of the cervical spine. ECF No. 10-1 at 490. Dr. Royals found spasm of the paraspinous muscles-lumbar and paraspinal cervical. ECF No. 10-1 at 491. However, Thomas has negative straight leg raises, is able to walk on her toes and heels, can squat to the floor and recover, can perform tandem heel walking, and can bend over and touch her toes. ECF No. 10-1 at 491. Thomas also has normal grip

11

strength in both hands; normal fine and gross manipulative skills; no evidence of muscular atrophy in her hands; her motor strength was 5/5 in all extremities; her sensation is intact; and her range of motion is normal. ECF No. 10-1 at 491. However, Thomas has joint abnormality in her wrists. ECF No. 10-1 at 492. X-rays of Thomas's cervical spine showed minimal degenerative changes; well-maintained disc spaces; and normal lordosis. ECF No. 10-1 at 492.

Dr. Royals noted that Thomas exhibited mental abnormalities, her mood was somber mood, and she was emotional. ECF No. 10-1 at 491.

Dr. Royals diagnosed: (1) rheumatoid arthritis well-controlled on medications, without limitations in motion of any joint and with self-limiting pain; (2) lupus, well-controlled with no evidence of end-organ damage; (3) cervical degenerative disc disease, early with no neuro deficits and self-limiting; (4) depression; (5) anxiety; (6) fibromyalgia per history with fatigue and diffuse pain, that was self-limiting; and (7) non-debilitating restless leg syndrome. ECF No. 10-1 at 492. Dr. Royals concluded that Thomas has no limitations in her ability to stand, sit, walk, bend or stop, reach, handle, lift, carry, see, hear, or with memory or understanding. ECF No. 10-1 at 492. However, Dr. Royals recommended a psychomotor evaluation for anxiety and depression. ECF No. 10-1 at 492.

Thomas also saw Dr. Mendez in March 2018 for complaints of pain and swelling in her joints, contending her arthritis symptoms had increased since Humira and methotrexate were discontinued. ECF No. 10-1 at 552, 696. Dr.

12

Mendez noted that Thomas, then 52 years old, had a 25 year history of rheumatoid arthritis. ECF No. 10-1 at 552, 696. Thomas had two swollen joints and 12 painful joints with mild pain in both hands and tenderness in her right shoulder and right his, and decreased range of motion in her neck. ECF No. 10-1 at 554, 698. Dr. Mendez diagnosed rheumatoid arthritis of both hands. ECF No. 10-1 at 555, 699.

In April 2018, Thomas was given a consultative examination by Dr. Andrew J. Thrasher III, Ph. D, a clinical psychologist, at the request of the SSA. ECF Nos. 10-1 at 498-501. Thomas related that she was separated from her husband, has two children and some family (in Germany) but lives alone, and is unable to work any longer due to pain. ECF No. 10-1 at 499. Thomas's dominant mood was depressed and tearful. ECF No. 10-1 at 499. Thomas reported past suicidal ideation, but no attempts. ECF No. 10-1 at 499. Depression caused her short-term memory deficit and poor concentration, persistence, and pace. ECF No. 10-1 at 499. Dr. Thrasher did not note any significant symptom exaggerations. ECF No. 10-1 at 500.

Dr. Thrasher diagnosed major depressive disorder, recurrent episode; panic disorder; unspecified anxiety disorder; suicidal ideation; relationship distress with spouse; and other problem related to employment. ECF No. 10-1 at 500-501. Dr. Thrasher noted that Thomas's ability to learn and remember new material, and her ability to sustain concentration in order to perform complex tasks, were below average. ECF No. 10-1 at 501. Dr. Thrasher stated that Thomas's emotional stability, reliability, and judgment would more likely than not *interfere* with her

13

ability to tolerate the stress, pressure, and social environment common in a routine 8-hour day and 40-hour work week.  ECF No. 10-1 at 501.  Dr. Thrasher found Thomas's current emotional instability suggested she would struggle with essential occupational tasks.  ECF No. 10-1 at 501.

In April 2018, Thomas reported to Gatte that her medications were helping, but she still did not sleep well, and was depressed and anxious.  ECF No. 10-1 at 507.  Gatte encouraged Thomas to apply for social security disability.  ECF No. 10-1 at 530.  It was noted that Thomas had been on medications since 2000, since her oldest son had brain cancer at age 11, and she was diagnosed in 2005 with lupus. ECF No. 10-1 at 530.  Thomas was not on medications from 2009 to 2011 (due to moving to Louisiana), but resumed medications in 2011 and has not been off of them since then.  ECF No. 10-1 at 530.  Thomas's symptoms were not well-controlled at that time.  ECF No. 10-1 at 531.

In April 2018, a physical residual functional capacity assessment was made by Dr Emily Eisenhauer from a review of Thomas's medical records.  ECF No. 10-1 at 92.  Dr. Eisenhauer found Thomas was exertional limitations: Thomas can occasionally (1/3 or less of an eight-hour day) lift/carry up to 20 pounds; frequently lift/carry 10 pounds; stand/walk about six hours in an eight-hour day; and unlimited pushing or pulling with her hands or feet.  ECF No. 10-1 at 92.  Dr. Eisenhauer further found that Thomas: can only occasionally climb ramps or stairs; can never climb ladders, ropes or scaffolds; can frequently balance; and can occasionally stoop,

14

kneel, crouch or crawl. ECF No. 10-1 at 92-93. Thomas must avoid concentrated exposure to extreme cold due to her fibromyalgia and rheumatoid arthritis. ECF No. 10-1 at 93.

Also in April 2018, Disability Determinations examiner Dr. David G. Atkins, Ph.D. reviewed Thomas's medical records to determine whether she meets a Listing in Appendix I. ECF No. 10-1 at 94. Dr. Atkins found Thomas has: moderate limitations in her ability to understand and remember detailed instructions; moderate limitations in her ability to carry out detailed instructions; moderate limitations in her ability to maintain attention and concentration for extended periods; and moderate limitations in her ability to work in coordination with or in proximity to others without being distracted. ECF No. 10-1 at 94-96. Dr. Atkins also found that Thomas is moderately limited in her ability to respond appropriately to changes in her work setting to her diminished tolerance to stress and change. ECF No. 10-1 at 96. Dr. Atkins also filled out a psychiatric review technique form. ECF No. 10-1 at 89. Dr. Atkins found that Thomas has moderate limitations in: her ability to understand, remember or apply information; to interact with others; in her ability to concentrate, persist, or maintain pace; and her ability to adapt or manage herself. ECF No. 10-1 at 89. Dr. Atkins found that Thomas does not meet the Listings in Appendix I for Depressive, Bipolar, and Related Disorders (Listing 12.04), or for Anxiety and Obsessive-Compulsive Disorders (Listing 12.06).

In June 2018, Thomas reported having a panic attack while asleep the night before her appointment.   ECF NO. 10-1 at 528.    Thomas was exhausted and suffering cognitively; her pain was increased; and she was disheveled, tearful, lethargic, depressed, anxious, and having difficulty concentrating.   ECF No. 10-1 at 528.   Thomas also reported moderate pain in her hands and severe pain in her lumbar spine.   ECF No. 10-1 at 686.   Thomas had an antalgic gait and a limited range of motion in her lumbar spine.   ECF No. 10-1 at 689.   Dr. Mendez found six tender joints and three tender trigger points.   ECF No. 687, 872.   Dr. Mendez diagnosed rheumatoid arthritis of both hands, fibromyalgia syndrome, and degenerative joint disease.   ECF No. 10-1 at 689, 873.   Dr. Mendoza also added a new problem of long-term opioid therapy.   ECF No. 10-1 at 694.

In July 2018, Thomas followed up with Gatte.   Thomas was sleeping well, but still depressed and anxious.   ECF No. 10-1 at 509.   Gatte continued Thomas's Cymbalta, Wellbutrin, trazodone, and Vistaril.   Gatte added buspirone, and recommended psychotherapy, exercise, and a healthy diet.   ECF No. 10-1 at 975. An x-ray of Thomas's lumbosacral spine showed multilevel multifactorial degenerative change, greatest at L4-5 ant L5-S1.   ECF No. 10-1 at 680, 869.

A Medical Source Statement in August 2018 from Roberta Dowden, LCSW, and Psychiatric Nurse Practitioner Fralan Gatte, APRN, showed that Thomas has major depressive disorder (recurrent and severe), chronic PTSD, and panic disorder. ECF No. 10-1 at 503.    Dowden and Gatte stated that Thomas's prognosis is

16

guarded. ECF No. 10-1 at 503. Thomas was described as: very depressed; withdrawn; tearful almost daily; with panic attacks; low energy; poor sleep; unmotivated; loss of interest; cognitive slowing; her mental symptoms are exacerbated by her physical symptoms and pain; and her physical symptoms are exacerbated by her mental symptoms. ECF No. 10-1 at 503. Thomas's symptoms were listed as: anhedonia or pervasive loss of interest in activities; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty concentrating; change in personality; apprehension; appetite disturbance; memory impairment; emotional lability; easy distractibility; sleep disturbance; panic attacks; unstable interpersonal relationships; and emotional withdrawal or isolation. ECF No. 10-1 at 503.

They further stated that Thomas is unable to meet competitive standards in: remembering work-like procedures; maintaining attention for a two hour segment; making simple, work-related decisions; accepting instructions ad respond appropriately to criticism from supervisors; and interacting appropriately with the public. ECF No. 10-1 at 504-505. Thomas has no useful ability to: maintain regular attendance and be punctual; perform at a consistent pacer without an unreasonable number of rest periods; get along with co-workers or peers without unduly distracting them; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; or travel in unfamiliar places. ECF No. 10-1 at 504-505.

17

Thomas is also seriously limited, but not precluded, in the following areas: understand and remember short, simple instructions; carry out short, simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted; and respond appropriately to changes in routine work. ECF No. 10-1 at 504-505. Thomas finds the following demands of work stressful: speed;, precision; complexity; deadlines; working within a schedule; making decisions; exercising independent judgment; completing tasks; being criticized by supervisors; getting to work regularly; remaining at work for a full day; fear of failure at work; and dealing with the public. ECF No. 10-1 at 505. Thomas was  expected to be absent from work more than three times per month. ECF No. 10-1 at 505.

In August 2018, Thomas reported to Gatte that she was doing better on her medications plus buspirone. ECF No. 10-1 at 512. Thomas reported that she still had some depression and anxiety, but was sleeping well. ECF No. 10-1 at 512. In psychotherapy, Thomas said her pain had been worse and she had been prescribed hydrocodone. ECF No. 10-1 at 526.

In September 2018, Thomas complained of increased back pain. ECF No. 10-1 at 655. Thomas had one tender trigger point in her quadratus lumborus. ECF No. 10-1 at 657. Dr. Mendez diagnosed her rheumatoid arthritis of both hands, degenerative joint disease of the lumbar spine, and fibromyalgia, and noted her long term opioid therapy. ECF No. 10-1 at 657-58.

18

By October 2018, Thomas reported sleeping well, and having no depression and little anxiety.  ECF No. 10-1 at 514.  In January 2019, Thomas's improvement continued.  ECF No. 10-1 at 516-17.  An echocardiogram showed a calcified aorta and an estimated 60 – 65% ejection fraction.[3]  ECF No. 10-1 at 646, 650-51, 656.  An MRI of Thomas's lumbar spine showed multilevel degenerative changes with mild bilateral neural foraminal narrowing at L2-3 and L3-4, mild left neural foraminal narrowing at L4-5, and a narrowed thecal sac at L3-4.  ECF No. 10-1 at 853-54, 865, 922, 958.

In October 2018, Thomas was evaluated by Dr. Miguel A. DePuy, a cardiovascular specialist.  ECF NO. 10-1 at 913.  Thomas complained of episodes of palpitations and chest discomfort intermittently for several months.  ECF NO. 10-1 at 913.  Dr. DePuy found palpitations, atypical chest discomfort, atherosclerosis or aorta, an abnormal electrocardiogram and echocardiogram (suggesting diastolic dysfunction), rheumatoid arthritis of both hands, and diastolic dysfunction.  ECF No. 10-1 at 915, 919, 923.  Chest x-rays in December 2018 showed no acute cardiopulmonary abnormality.  ECF No. 10-1 at 855, 867, 904.

In November 2018, Thomas was evaluated by Dr. Joseph W. Crookshank III, an orthopaedic specialist, for mechanical axial low back pain.  ECF No. 10-1 at 944.  Dr. Crookshank noted that conservative treatment had failed to alleviate Thomas's bilateral low back pain, which negatively impacted her ability to work, overall

---

[3] Thomas is a long-time smoker, half a pack of cigarettes daily.

functionality, and quality of life.  ECF No. 10-1 at 944.  Thomas's gait was symmetric and reciprocal, she had normal thoraco-lumbar posture, and was tender palpation over the lumbar paraspinals only.  ECF NO. 10-1 at 937-38.  Thomas had mildly restricted lumbar range of motion and normal hip motion, and her lumbar pain was recreated with forward flexion and hyperextension.  ECF NO. 10-1 at 938-39.  Dr. Crookshank diagnosed spondylosis in the lumbar region and mechanical axial low back pain, and planned bilateral L3-5 medial branch blocks.  ECF No. 10-1 at 948-49.

In November 2018, Thomas underwent bilateral L3-L5 medial branch block for her lumbar spondylosis without myelopathy.  ECF No. 10-1 at 942.  Dr. Crookshank found Thomas's mechanical axial low back pain was 75% relieved for five hours, then returned to normal.  ECF No. 10-1 at 926.

In December 2018, Thomas again underwent bilateral L3-L5 medial branch block for her lumbar spondylosis.  ECF No. 10-1 at 925-27, 933.  Dr. Crookshank found Thomas's mechanical axial low back pain was 80% relieved for 24 to 48 hours, then returned.  ECF NO. 10-1 at 927-29.

In December 2018, Thomas complained to Dr. Mendez of aching hip pain.  ECF No. 10-1 at 905.  Thomas had 14 tender joints.  ECF NO. 10-1 at 908.  Dr. Mendez continued Thomas's Humira prescription.  ECF No. 10-1 at 909.

In January 2019, Thomas continued her psychotherapy with Dowden.  Dowden noted that her back pain was worse and she was using hydrocodone up to

four times per day, but that she could not afford the recommended procedure to relieve her back pain for up to six months.  ECF No. 10-1 at 520.  Thomas reported the hydrocodone made her slow and severely constipated.  ECF No. 10-1 at 520.  Thomas said she must change positions often between sitting and standing frequently due to pain, and has the most pain relief when she is laying down.  ECF No. 10-1 at 520.  Thomas also could not afford her recommended cardiac workup.  ECF No. 10-1 at 520.  Thomas reported her husband removed most of the furniture from the house and demanded that she give him part of her paychecks.  ECF No. 10-1 at 521.  Thomas was unsure whether he would continue to pay the mortgage. ECF No. 10-1 at 521.

Dr. Mendez found Thomas had two tender joints–her left and right hips. ECF No. 10-1 at 893.  Dr. Mendez noted that another rheumatologist had confirmed the diagnosis of rheumatoid arthritis.  ECF NO. 10-1 at 894.  Dr. Mendez discussed the long-term use of opiates with Thomas, and recommended interventional pain management.  ECF No. 10-1 at 894.

Later in January 2019, Thomas reported her husband had lost his job and told her he would no longer be able to pay her house note.  ECF No. 10-1 at 545. Thomas stated she is unable to work, so she will lose her home.  ECF No. 10-1 at 545.  Thomas does not want to live with her husband in Oklahoma because of his bisexual lifestyle and his past abusiveness.  ECF No. 10-1 at 545.  However, if he

21

divorces her, she will lose her health insurance.  ECF No. 10-1 at 546.  Thomas's sons are not able to support her, either.   ECF No. 10-1 at 546.

In February 2019, Dr. Mendez (a rheumatologist) provided a Medical Source Statement setting forth Thomas's physical ability to do work-related activities. ECF No. 10-1 at 539.  Dr. Mendez found that Thomas can never lift or carry more than five pounds; can sit for 10 to 30 minutes at a time and stand or walk 5 to 20 minutes at a time; can sit up to three hours in an eight-hour day; can stand up to one hour in an eight-hour day; can walk up to one hour in an eight-hour day; should rest the remainder of the eight-hour day; can reach overhead or in any direction with either hand occasionally (up to 1/3 of the day) but not repetitively; can handle, finger, feel, and push/pull with either hand occasionally (up to 1/3 of the day) but not repetitively; her left hand is her dominant hand; Thomas cannot able reach, grasp, or handle items on days when her rheumatoid arthritis is flared up; she cannot climb stairs, ramps, ladders, or scaffolds; and she cannot balance, stoop, kneel, crouch, or crawl.  ECF No. 10-1 at 539-542.

Dr. Mendez also found that Thomas can never: work at unprotected heights; work around moving mechanical parts; work in humidity and wetness; work around dust, odors, fumes, and pulmonary irritants; work in extreme cold or hear; or work around vibrations.  ECF No. 10-1 at 543.  Thomas can only occasionally (up to 1/3 of the day) operate a motor vehicle.  ECF No. 10-1 at 543.  Dr. Mendez further found that Thomas can: shop and travel without a companion for assistance on good days;

22

ambulate without an assistive device; occasionally but not consistently climb a few steps at a reasonable pace with the use of a single handrail; prepare a simple meal and feed herself; and take care of her personal hygiene. ECF No. 10-1 at 544. However, Thomas can never: walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; or sort, handle, or use paper or files. ECF No. 10-1 at 544. Dr. Mendoza stated that all of Thomas's limitations have been present for several years. ECF No. 10-1 at 544.

### C.   Administrative Hearing

An Administrative Hearing was held in March 2019 before an ALJ at which Thomas appeared with her attorney and a vocational expert ("VE"). ECF No 10-1 at 46-47. Thomas testified that she was 53 years old, 5' 4" tall, weighed about 165 pounds, and is left-handed. ECF No. 10-1 at 49. Thomas is separated from her husband and has two children over 18 years old. ECF No. 10-1 at 49-50.

Thomas testified that she drives, has had two years of college, is not currently working, and worked as a server at Pizza Hut from 2004 through early 2018. ECF No. 10-1 at 50-51. Thomas waited on customers, served food, operated the cash register, occasionally assisted with making food, and cleaned tables and restrooms. ECF No. 10-1 at 51. Thomas was on her feet all day and she had to carry heavy trays. ECF No. 10-1 at 61. If she was having a bad day and was unable to carry a heavy tray, Thomas would just carry less and make more trips or use a hand brace. ECF No. 10-1 at 61. In her last years at Pizza Hut, Thomas's

absences became more and more frequent, and because she her flare ups occurred without warning, she had to give short notice of her inability to work.  ECF No. 10-1 at 61.

Thomas testified that she can no longer carry heavy trays and would have difficulty with the cleaning chores.  ECF No. 10-1 at 61.  That is the only work Thomas has done in the last 15 years.  ECF NO. 10-1 at 61.

Thomas testified that she is disabled from working because she has chronic daily pain, her mobility is greatly decreased, and it is very difficult to do the physical tasks of her work.  ECF No. 10-1 at 52.  Thomas has lupus, rheumatoid arthritis, fibromyalgia, depression, PTSD, and anxiety disorder.  ECF No. 10-1 at 52.  Thomas's medication helps, but her pain fluctuates in intensity and location. ECF No. 10-1 at 53.

Thomas is sometimes unable to dress and bath herself, wash her hair, get in and out of the shower, button her shirt, and put on her shoes and socks.  ECF No. 10-1 at 53.  Thomas also has difficulty reaching, particularly with her right side. ECF No. 10-1 at 53.  Thomas is able to perform household chores such as laundry, dishes and some cooking, but not every day.  ECF No. 10-1 at 53-54.  Thomas does not do yard work except for watering plants.  ECF No. 10-1 at 54.  When Thomas shops for groceries, she has to load them onto her passenger seat or back seat because she is not able to lift and close the trunk of her car.  ECF No. 10-1 at 71.

24

Thomas does not go out socially.  ECF No. 10-1 at 73.  Thomas said her pain and depression seem to make each other worse.  ECF No. 10-1 at 73.

Thomas testified that she is able to lift up to five pounds, and can walk several hundred feet (probably a block) on a good day, but cannot walk on a bad day due to inflammation in her joints and fatigue.  ECF No. 10-1 at 54-55.  Thomas can sit for 15 to 30 minutes before she needs to stand up, and stand about 30 minutes before she needs to sit.  ECF No. 10-1 at 55.

Thomas testified that, on a good day, Thomas takes care of neglected tasks in her home, goes outside for a while, reads and catches up on her mail, spends time with her dog, and runs errands or shops a little.  ECF No. 10-1 at 63.  However, running errands involves a car trip (she lives in a rural area) that aggravates her back pain.  ECF No. 10-1 at 64.  On a bad day, Thomas stays "in bed and medicated" for most of the day or in her recliner.  ECF No. 10-1 at 64, 70.  The pain and stiffness in her joints can turn a small task, such as laundry or taking out the trash, into a "huge project."  ECF No. 10-1 at 67.  Thomas has a friend that helps her with deep cleaning (vacuuming, mopping) and shopping.  ECF No. 10-1 at 67, 70.  The less Thomas is able to do, the more depressed she feels.  ECF No. 10-1 at 67-68.

Thomas testified that she has problems with attention and concentration–she has difficulty staying on task and remembering things (short and long term).  ECT

No. 10-1 at 68-69.  Thomas used to like to read, but now has difficulty staying focused.  ECF No. 10-1 at 69.

Thomas takes: Humira injections every other week for her rheumatoid arthritis; Rayos (prednisone) daily to keep inflammation down; hydrocodone for pain, three or four times per day on acute days; Vitamin D; Diclofenac ointment for back pain; Lyrica for fibromyalgia; and Duloxetine (generic Cymbalta); and Bupropion, Trazadone, and Buspirone for mental health issues.  ECF No. 10-1 at 65-66.  Thomas suffers medication side effect of dizziness, lightheadedness, fatigue, sleepiness, constipation, headaches, and nausea.  ECF No. 10-1 at 66.

Thomas testified that she has received mental health treatment since 2011, with a lapse in treatment between 2011 and 2013.  ECF No. 10-1 at 55.  The symptoms of Thomas's depression and PTSD are chronic crying, withdrawal from people and social activities, staying home, anxiety, panic attacks, fatigue, and feeling helpless.  ECF No. 10-1 at 56.

Thomas's hands get very stiff and tight, the joints swell and get inflamed, and she has trouble with fine movement.  ECF No. 10-1 at 56-57.  She puts her hands in hot water to increase flexibility and movement.  ECF No. 10-1 at 57.  Thomas has difficulty opening a jar or twisting and turning doorknobs, and her hands are weak.  ECF No. 10-1 at 57.  Thomas's problems with her knees are about the as the problems with her hands.  ECF NO. 10-1 at 57.  When her knees are inflamed and tight, she has difficulty stretching them out and they hurt.  ECF NO.

26

10-1 at 57.  Thomas's feet and ankles swell and get inflamed, with severe throbbing pain and no flexibility.  ECF No. 10-1 at 57-58.  When that happens, Thomas has difficulty putting on shoes and walking, so she uses crutches if she has to move around.  ECF No. 10-1 at 58.  Thomas testified that flare-ups occur unpredictably and without warning, and may last 12 hours or 2 days.  ECF NO. 10-1 at 58-59.

Thomas also testified that she has chronic, daily back pain in her lower back that flares out to her hips and goes up her back on the right side.  ECF No. 10-1 at 59.  Thomas has difficulty bending, twisting, sitting, or standing for a prolonged time, and she cannot squat.  ECF No. 10-1 at 59, 70.  The more Thomas exerts herself physically, the more her back hurts.  ECF No. 10-1 at 60.  Thomas relieves her back pain by laying in bed.  ECF No. 10-1 at 59.  Thomas testified that her rheumatoid arthritis began when she was in her twenties, as occasional swelling and pain in her feet.  ECF No. 10-1 at 60.  Thomas would have months in between flare-ups.  ECF No. 10-1 at 60.  Over the years, flare-ups became more frequent and more extreme.  ECF No. 10-1 at 60.

Thomas testified that she has some problems sleeping.  ECF No. 10-1 at 71.  Thomas used to have a panic attack every night, but with her antidepressant medication she only has them about once a week.  ECF No. 10-1 at 71,72.  Some nights, she sleeps all night but wakes up tired.  ECF No. 10-1 at 71.

The VE testified that Thomas's past relevant work as a restaurant server and cashier was light, SVP 3, DOT[4] No. 311.477-010.  ECF No. 10-1 at 74.  However, as Thomas performed the job, at least some of the work was medium.  ECF No. 10-1 at 74.  The VE testified that Thomas has no skills that are transferable to light or sedentary work.  ECF No. 10-1 at 75.

The ALJ posed a hypothetical to the VE involving a person who is closely approaching advance age, with Thomas's past relevant work, a high school education, the ability to read and perform basic math, and no transferability to skills to light or sedentary work.  The ALJ further explained that the person: can occasionally lift and carry up 20 pounds; can frequently lift and carry up to 10 pounds; can stand and/or walk a total of six hours in an eight-hour day; can sit for six hours in an eight-hour day; can only occasionally climb ramps and stairs, or stoop, kneel, crouch, and crawl; can never climb ladders, ropes or scaffolds; can frequently balance; can only occasionally interact with the public; can have only occasional changes to the work setting; can only occasionally make work-related decisions; can understand and remember simple instructions; and must avoid concentrated exposure to extreme cold.  ECF No. 10-1 at 75.

The VE testified that such a person could not do her past relevant work, but could work as: (1) a janitor at the light work level–SVP 2, DOT No. 323.687-014 (140,000 jobs in the national economy); (2) a silver wrapper–light, SVP 2, DOT No.

---

[4] *Dictionary of Occupational Titles.*

318.687-018 (108,000 jobs in the national economy); or (3) a price marker–light, SVP 2, DOT No. 209.587-034 (310,000 jobs in the national economy).

The ALJ posed a second hypothetical to the VE involving the same individual described in the first hypothetical except that she: cannot lift or carry more than five pounds; can sit up to three hours in an eight-hour day; can stand up to one hour in an eight-hour day; can walk up to one hour in an eight-hour day ; can sit 10 to 30 minutes at a time; can stand five to 20 minutes at a time; can walk five to 20 minutes at a time; and does not require a cane to ambulate.  ECF No. 10-1 at 76. The hypothetical individual is also: left-hand dominant; can occasionally reach overhead or in any other direction bilaterally, but reaching is prevented several days a week; can  handle, finger, feel, push and pull; can only occasionally operate foot controls, bilaterally; cannot consistently climb stairs, ramps, ladders and scaffolds; cannot consistently balance, stoop, kneel, crouch, or crawl; and cannot work at unprotected heights, around moving mechanical parts, in humidity and wetness, around dust, odors, fumes, or pulmonary irritants, or around vibrations; and cannot work in extreme cold or heat.  ECF No. 10-1 at 76-77.  The individual can only occasionally operate a motor vehicle; can shop and travel without a companion on good days; can ambulate without an assistive device;  can climb a few steps at a reasonable pace with the use of a single handrail; cannot walk a block at a reasonable pace; cannot use standard public transportation; can prepare a simple

meal and feed herself; can care for personal hygiene; and cannot sort, handle or use paper files.  ECF No. 10-1 at 77.

The VE testified that such an individual would not be able to perform her past relevant work.  ECF No. 10-1 at 77.  The individual could only work at a less than sedentary level, and there would be no work that such a person could do, since the person could not work an eight hour day.  ECF No. 10-1 at 77.

The ALJ posed a third hypothetical to the VE, involving a person who is: unable to remember work-like procedures; unable to maintain attention for two-hour segments; unable to make simple work decisions or accept instructions; unable to maintain regular attendance and be punctual; unable to work at a consistent pace without an unreasonable number of rest periods; unable to get along with co-workers or peers without unduly distracting them; and severely limited in carrying out short, simple instructions, in sustaining an ordinary routine without special supervision, and in working in coordination or proximity to others without being distracting.  ECF No. 10-1 at 77-78.  The individual also: can satisfactorily answer simple questions or request assistance; cannot deal with normal work stress; cannot understand and remember detailed instructions or carry out detailed instructions; cannot set realistic goals; cannot travel in unfamiliar place; and is unable to interact appropriately with the general public.  ECF No. 10-1 at 78.

The VE testified that such an individual could not do her past relevant work, and could  not do any other work.  ECF No. 10-1 at 78.  The VE explained that the

inability to work at all with co-workers, to be punctual, or to understand and carry out simple instructions would prevent a person from working at any job. ECF No. 10-1 at 78.

The ALJ posed a fourth hypothetical to the VE, involving the person described in Hypothetical No.1 and additional factors: must avoid concentrated exposure to sunlight; can frequently, bilaterally reach overhead and in all other directions with her upper extremities; must avoid unprotected heights and hazardous machinery; must avoid uneven, vibrating, or rough surfaces; and can frequently operate foot controls, bilaterally. ECF No. 10-1 at 79. The VE testified that such a person could not do her past relevant work, but could do the jobs described in her response to Hypothetical No. 1. ECF NO. 10-1 at 79.

The ALJ posed a fifth hypothetical to the VE involving a person whose ability to maintain emotional stability, reliability and judgment more likely than not (greater than a 50% probability) will interfere with her ability to tolerate the stress, pressure, and social environment common during the course of a routine eight-hour workday. ECF No. 10-1 at 79. The person also has the capacity to understand and follow simple, three-stage commands. ECF NO. 10-1 at 79. The VE testified that such a person would not be able to return to her past relevant work and there would not be any other work the person could perform due to a reduced ability to deal with the stress or social environment of a job (less than 50% of the time). ECF No. 10-1 at 79-80.

D.   <u>The ALJ's Findings and Conclusions</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Thomas: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.  *See Greenspan*, 38 F.3d at 237.

In the case at bar, the ALJ found that Thomas has not engaged in substantial gainful activity since January 1, 2017, and that she has severe impairments of rheumatoid arthritis, systemic lupus erythematosus, fibromyalgia, degenerative

disc disease of the cervical spine, major depressive disorder, and generalized anxiety disorder, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1. ECF No. 10-1 at 22-23. The ALJ also found that Thomas is unable to perform her past relevant work as a waitress. ECF No. 10-1 at 30.

At Step No. 5 of the sequential process, the ALJ further found that Thomas has the residual functional capacity to perform light work except that: she can stand, walk, and sit for up to six hours; she can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can frequently balance; she can frequently reach overhead and in all other directions with both upper extremities; she can frequently operate foot controls with both lower extremities; she must avoid concentrated exposure to extreme cold and sunlight; she cannot work at unprotected heights or with or around hazardous machinery; she cannot work on uneven, vibrating, and rough surfaces; she can handle only occasional changes to the work setting; she can only occasionally make work-related decisions; she can have no more than occasional interactions with the public; and she can only understand and remember simple instructions. ECF No. 10-1 at 24.

The ALJ found that Thomas is closely approaching advanced age, with at least a high school education, and that transferability of work skills is immaterial. ECF No. 10-1 at 30. The ALJ concluded that there are a significant number of jobs

in the national economy that Thomas can perform, such as cleaner/housekeeping; silver wrapper; and price-marker (DOT No. 209.587-034; light; unskilled; SVP 2; 310,000 jobs in the national economy). ECF No. 10-1 at 31. Therefore, Thomas was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on May 15, 2019. ECF No. 10-1 at 31.

## II.    Law and Analysis

### A.    Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v.*

34

*Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

### B.    The ALJ erred in finding Thomas is not disabled.

Thomas contends the ALJ erred by finding that she is not disabled by her physical and mental impairments. Specifically, Thomas argues the ALJ erred: by finding that Thomas has not been under a disability through May 15, 2019; by finding that Thomas does not suffer from significant mental problems and physical problems which, singularly or in combination, rendered her disabled in light of the substantial medical evidence in the record; in failing to give sufficient weight to the opinion of Dr. Mendez, when the evidence provided that she was disabled and did not support the ALJ's finding that she was not disabled; in giving more weight to the opinion of the consultative expert than to the opinion of her treating rheumatologist as to Thomas's physical limitations; in finding that Thomas could

perform work that exists in significant numbers in the economy; and in finding claimant's testimony regarding the intensity, persistence and limiting effects of her symptoms were not consistent with the medical evidence.

<ol>
<li>**The ALJ did not err in accepting the opinion of an examining consultant over that of Thomas's treating doctor, and in finding Thomas is not disabled by pain.**</li>
</ol>

Thomas contends the ALJ erred by giving more weight to the opinion of the Dr. Royals, a consultative expert, than to the opinion of her treating rheumatologist, Dr. Mendez, as to Thomas's physical limitations; in finding she does not suffer from disabling pain; and in finding Thomas's testimony regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence.

Because the treating physician is most familiar with the claimant's impairments, his opinion should be accorded great weight in determining disability. *See Giles v. Astrue*, 433 Fed. Appx. 241, 246–47 (5th Cir. 2011) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *See Giles*, 433 Fed. Appx. at 246-47 (citing 20 C.F.R. § 404.1527(d)(2)). Likewise, when a treating physician has reasonable knowledge of the impairment, his opinion is given more weight than an opinion from a non-treating physician. *See id.*

36

By contrast, the Commissioner may give less weight to a treating physician's opinion about a condition outside his area of expertise. *See id.* Treating physicians' opinions also receive greater weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *See id.* The weight given to opinions from non-examining physicians depends on "the degree to which they provide supporting explanations for their opinions." *See id.* However, "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citing *Greenspan v. Shalala,* 38 F.3d at 237); *see also Loza v. Apfel,* 219 F.3d 378, 395 (5th Cir. 2000). "When good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.*

An ALJ is free to reject a physician's opinion when good cause exists. *Giles,* 433 Fed. Appx. at 246–47 (citing *Newton,* 209 F.3d at 455). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported

by the evidence.  *See Giles*, 433 Fed. Appx. at 246–47 (citing *Newton*, 209 F.3d at 456)*; see also Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995) (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other opinions, objective medical evidence, and claimant's own testimony).  However, an "ALJ should not reject the treating physician's opinion simply because it is not well-supported by the record."  *Giles,* 433 Fed. Appx. at 247 (citing 61 Fed. Reg. 34,490 (July 2, 1996)).  "In those instances, the opinion is not given controlling weight, but the treating source opinion is still entitled to deference."  *See Newton*, 209 F.3d at 455.

In this case, Dr. Mendez stated that Thomas was unable to work due to pain when she is suffering from a flare-up in her rheumatoid arthritis and from pain due to her cervical degenerative disc disease, lupus, and fibromyalgia.  Dr. Royals, the consultative examiner, found that, although Thomas has some pain, she has full ranges of motion and normal strength and dexterity.  Dr. Royals concluded that Thomas's pain is self-limiting and she is able to work.  The ALJ gave less weight to the opinion of Thomas's treating physician, Dr. Mendez, than to the opinion of the SSA's consultative examiner, Dr. Royals.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.  The mere existence of pain does not automatically

38

create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. *See Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)). The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some pain is within the discretion of the ALJ and will be upheld if supported by substantial evidence. *See Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. §404.1529(c)(4). Subjective complaints of pain must be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2000). Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *See Chambliss*, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's

decision on the severity of pain is entitled to considerable judicial deference. *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and to articulate his reasons for rejecting any subjective complaints. *See Falco v. Shalala*, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ found that Thomas suffers from "severe impairments" of rheumatoid arthritis, systemic lupus erythematosus, fibromyalgia, and degenerative disc disease of the cervical spine. ECF No. 10-1 at 22. The ALJ further found that Thomas's impairments could reasonably be expected to cause her alleged symptoms, but that her claims as to the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. ECF No. 10-1 at 25. The ALJ stated that, since February 2017, the majority of the records in evidence showed that the claimant's rheumatoid arthritis, fibromyalgia, and lupus were clinically stable with medications and her symptoms were mild. ECF No. 10-1 at 26. Further, her physical examinations were mostly normal, she usually had a normal gait, and she had not been prescribed an assistive device to walk. ECF No. 10-1 at 26.

In the fall of 2018, the claimant began complaining of worsening neck and back pain and eventually began treating with an orthopedist, although her other conditions remained stable. ECF No. 10-1 at 26. The ALJ noted that Thomas's straight leg raises were normal despite her back pain; she had a normal gait; and she could squat and recover, and bend and touch her toes. ECF No. 10-1 at 27. Thomas's range of motion was normal in all areas, she had normal motor strength and sensation in all extremities, and she had only minimal degenerative changes in her cervical spine. ECF No. 10-1 at 27. The ALJ concluded that, although Thomas has severe physical impairments, they are not as limiting as she claims and she can perform a limited range of light work. ECF No. 10-1 at 29.

Since the ALJ in this case has made the mandatory indication of the basis for her credibility choices concerning claimant's complaints, and since her choices are not unreasonable, her finding that Thomas's pain would not prevent Thomas from performing work is proper. *See Carry v. Heckler*, 750 F.2d 479, 485-86 (5th Cir. 1985). Substantial evidence supports the Commissioner's conclusion that Thomas is not disabled by pain from her rheumatoid arthritis, lupus, and fibromyalgia.

2.     **The ALJ erred in substituting her opinion for the opinion of all the mental health professionals.**

Thomas also contends the ALJ erred by finding that Thomas does not suffer from disabling mental problems.

The ALJ noted that NP Fralan Gatte and Roberta Dowden, LCSW concluded in their Medical Source Statement that Thomas had significant limitations in almost all areas of mental functioning and would likely miss work more than three times per month. Gatte and Dowden has treated Thomas on a consistent basis for two years. The ALJ also noted that Dr. Thrasher, the consulting psychologist, had concluded that Thomas was able to understand and follow simple three-step instructions, but that her "emotional stability, reliability, and judgment will more likely than not (greater than 50% probability) interfere" with her ability to work an 8-hour day and a 40-hour week. ECF No. 10-1 at 501. Also, Thomas will struggle to render a satisfactory performance on most essential occupational tasks. The VE testified there are no jobs that can be performed by a person who can deal with the stress and social environments of a job less than 50% of the time. ECF No. 10-1 at 80.

However, the ALJ found that Dr. Thrasher's opinion was "unpersuasive and inconsistent with the treatment records in evidence." ECF No. 10-1 at 29. The ALJ found that Gatte's and Dowden's opinions were "unpersuasive and inconsistent" because they were "outlined in a checklist-type form" and "offered no specific evidence to support such severe limitations in functioning." ECF No. 10-1 at 29. The ALJ then found that "while [Thomas] occasionally had some mildly abnormal mental status examinations, they were mostly within normal limits and certainly would not support the significant limitations outlined." ECF No. 10-1 at 29. The

42

ALJ also found that Thomas's symptoms were "improved significantly" and had consistently decreased when taking her medications as prescribed. ECF No. 10-1 at 29.

Thus, the ALJ rejected the opinions of all of the mental health professionals (both treating and consultative) concerning Thomas's ability to work, giving them no weight, and substituted her own opinion that Thomas's mental health problems do not prevent her from working.[5]

ALJs should not make their own independent medical assessments. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2002). An ALJ does not have the medical expertise to substitute her opinion as to the nature of a claimant's medical complaints for the supported and unrefuted diagnoses of the treating and consulting health-care providers. *See Frank*, 326 F.3d at 622. "Although common sense might dictate that a person who can [do a certain activity] can hold down a job, common sense about medical matters is often wrong." *See Frank*, 326 F.3d at 622; *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990), cert. den., 502 U.S. 901 (1991) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often

---

[5] The ALJ condemned the Medical Source Statements from Dr. Mendez, Gatte and Dowden in part because they were provided on a "list" type of form. However, it is noted that their forms are very similar to the form used by the Disability Determinations examiners. ECF No. 10-1 at 92-94, 111-13. The forms convey the appropriate information, with adequate detail, in a clear and concise manner.

wrong."); *see also Boulis-Gasche v. Commissioner of Social Security*, 451 Fed. Appx. 488, 494 (6th Cir. 2011) ("[T]he ALJ impermissibly substituted his own judgment for that of a physician.); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("The ALJ impermissibly 'played doctor' and reached his own independent medical conclusion when he determined that '[t]he level of treatment received also fails to infer limitations beyond the limitations described above in this decision.'").

The ALJ in this case made her own assessment of the mental health evidence and concluded that Thomas can work, contrary to the opinion of all three mental health professionals. There is no evidence that supports the ALJ's finding that Thomas can work despite her mental impairments. Because there is a "conspicuous absence of credible choices" and "no contrary medical evidence," substantial evidence does not support the Commissioner's conclusion that Thomas is not disabled.

Thomas is entitled to a decision in her favor based upon the existing record. The medical evidence of Thomas's mental impairments, the opinions of Thomas's treating mental health care providers (Gatte and Dowden) and the SSA's consultative examiner (Dr. Thrasher), and the testimony of the VE, show conclusively that Thomas's mental impairments preclude her from performing any work. There is no medical evidence as to Thomas's mental impairments that

indicates she can work.  The alleged onset date of January 1, 2017 is supported by the medical evidence of record. [6]

Finally, Thomas argues that her mental impairments meet Listing 12.04 for depressive disorder.  The ALJ appears to have relied on the assessment of Dr. Atkins, the Disability Determinations examiner, in finding that Thomas does not meet Listing 12.04.  ECF No. 10-1 at 23-24.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled.  *See Cieutat v. Bowen*, 824 F.2d 348, 351 n.1 (5th Cir. 1987); *see also Selders v. Sullivan*, 914 F.2d 614, 619 n. 1 (5th Cir. 1990).  A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990); *see also Selders*, 914 F. 2d at 619.  For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *See Zebley*, 110 S. Ct. at 891.

Listing 12.04 requires at least five of the listed characteristics of depressive disorder.  The Medical Source Statement and Dr. Thrasher's evaluation indicated

---

[6] In determining the onset date of disability, "the date alleged by the [claimant] should be used if it is consistent with all the evidence available." SSR 83–20, 1983 WL 31249, at *3. In February 2017, Thomas complained to Dr. Mendez about depression, anxiety, and difficulty falling asleep and staying asleep.  ECF No. 10-1 at 445.  Dr. Mendez diagnosed depression and anxiety and began prescribing Celexa.  ECF No. 10-1 at 446. Therefore, the evidence supports the disability onset date of January 1, 2017.

that Thomas had at least six of those characteristics.[7]   ECF No. 1-1 at  498-501, 503-506.

Listing 12.04 also requires one extreme limitation or two marked limitations. Thomas contends, and the Medical Source Statement shows, that she has an extreme limitation in her ability to concentrate, persist, or maintain pace.  ECF No. 10-1 at 504-05.  Dr. Thrasher's evaluation showed her concentration persistence and pace were "poor" but was unclear as to whether her limitation in that area was marked, extreme, or something less than those.  ECF No.  10-1 at 500.  It is also noted that psychologist Dr. Atkins, a Disability Determinations examiner who reviewed Thomas's medical records to determine whether she meets a listing, found her limitations were moderate.  ECF No. 10-1 at 89, 96.  Therefore, the medical evidence does not clearly show that Thomas meets Listing 12.04.

In any event, as discussed above, substantial evidence does not support the conclusions of the ALJ and the Appeals Council that Thomas is not disabled by her mental impairments.  The evidence shows that Thomas is entitled to a decision in her favor based upon the existing record.  Therefore, a judgment should be entered

---

[7] The Medical Source Statement from Gatte and Dowden shows that Thomas suffers from: depressed mood; pervasive loss of interest in activities; decreased energy; feeling of guilt or worthlessness; difficulty with concentration; and appetite disturbance, and has an extreme limitation in her ability to "concentrate, persist and maintain pace."   ECF No. 10-1 at 504-505.  Dr. Thrasher found that Thomas suffers from depressed mood; thoughts of suicide; is unable to maintain personal hygiene and dressing activities; has a short-term memory deficit; has poor concentration, pace and persistence; is emotionally unstable; and is unreliable.  ECF No. 10-1 at 499-500.  Dr. Thrasher did not address the other areas since his evaluation was focused only on Thomas's ability to work.

awarding Thomas disability benefits from her disability onset date of January 1, 2017. Thomas's case should also be remanded to the Commissioner for the limited purpose of determining the specific amount of benefits to which she is entitled.

## III.    Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that a JUDGMENT AWARDING DISABILITY BENEFITS to Thomas, beginning January 1, 2017, be ENTERED.

IT IS ALSO RECOMMENDED that Thomas's case be REMANDED to the Commissioner for a determination of the amount of benefits to which she is entitled.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R.

Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _15th_ day of November 2021.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge